**Adam BINGHAM, Plaintiff,**

**v.**

**OREGON SCHOOL ACTIVITIES ASSOCIATION, Wes Ediger in his official and individual capacities, Defendant.**

Civil No. 98–6282–TC.

United States District Court, D. Oregon.

Oct. 22, 1998.

Martha Lee Walters, Walters Romm & Chanti, Eugene, OR, for Adam Bingham.

Don G. Carter, Barry L. Groce, McEwen Gisvold Rankin Carter & Streinz, Portland, OR, for Oregon School Activities Ass'n and Wes Ediger.

## ORDER

COFFIN, United States Magistrate Judge.

Plaintiff Adam Bingham is an eighteen year old student at Marshfield High School in Coos County, Oregon. In this action he seeks, among other relief, an injunction prohibiting defendant Oregon School Activities Association (OSAA) from enforcing one of its rules (the Eight Semester Rule) which in effect precludes plaintiff from participating in athletics while he attends school this year.

The Eight Semester Rule limits a high school student's eligibility to participate in athletics to eight consecutive semesters commencing with the entering of the ninth grade.

Plaintiff, because he repeated tenth grade, is a fifth year senior and is thus in his ninth semester. Absent a waiver of the rule by the OSAA, plaintiff is ineligible to participate in interscholastic athletics.

Among other claims advanced by plaintiff, he contends he suffers from Attention Deficit Disorder (ADD), that his condition constitutes a disability cognizable under the Americans with Disabilities Act (ADA), that his repetition of the tenth grade was caused by his disability, and that OSAA is discriminating against him because of his disability in that a waiver of the Eight Semester Rule is a reasonable accommodation for his disability and OSAA has refused to grant such a waiver.

On October 13, 1998, this Court held a hearing on plaintiff's motion for a preliminary injunction prohibiting OSAA from applying its Eight Semester Rule to bar him from participating in athletics during his senior year at Marshfield.

From testimony and documents submitted in connection with the hearing on plaintiff's motion, the Court finds as follows:

1) OSAA is a non-profit private corporation formed in 1918 for the purpose of coordinat-

ing and regulating interscholastic activities throughout the State. Among the activities governed by the OSAA are high school football, volleyball, cross country, soccer, basketball, wrestling, swimming, baseball, softball, track and field, golf, tennis, cheerleading, dance and drill, music and speech.

2) OSAA is a voluntary organization. Any high school in Oregon can petition to join. Currently OSAA has 278 member schools, 226 of which are public high schools and 52 of which are private high schools.

3) OSAA is governed by a Delegate assembly comprised of 31 representatives, most of which are administrators from member high schools. One representative to the Delegate Assembly is elected by the Oregon School Board Association, and one member is elected by the Oregon Athletic Director's Association. The remainder of the Delegate Assembly members are elected by the various districts into which member high schools are organized throughout the State.

4) Pursuant to its rule making authority under 4–2 of the OSAA Constitution, the Delegate Assembly has adopted a set of Rules which govern each athletic district and student who represents his or her school in any scholastic activity sponsored by the OSAA. Rule 8–3, entitled Duration of Eligibility/Graduation (the Eight Semester Rule) states:

> A student may participate in the interscholastic program for four consecutive years (eight semesters or the equivalent) after entering the ninth grade. However, a student becomes ineligible thereafter [or] upon graduation from high school.

5) OSAA'S purpose in enforcing the Eight Semester Rule is threefold: 1) to ensure safety; 2) to promote competitive fairness; and 3) to encourage students to graduate in four years. The Eight Semester Rule ensures safety by preventing older, more athletically experienced and physically developed students from competing against students who do not possess comparable skill and stature. OSAA intends the rule to promote competitive fairness by ensuring that the athletes participating are of comparable skill and athletic experience and that younger students are given an opportunity to participate. The Eight Semester

Rule is designed to prevent overzealous coaches or parents from engaging in the practice of "red-shirting," (holding students back until they mature physically and athletically to give their team or child a competitive advantage). Lastly, the rule is designed to encourage students to graduate in four years, promoting the OSAA policy that each student-athlete is attending high school, first and foremost, for educational purposes.

6) Upon petition, the Executive Board or Executive Director, pursuant to OSAA Rule 8–9–3, "may, at its discretion, and upon terms and conditions as it may impose, waive or modify any eligibility rule ... when in its opinion there are circumstances beyond the control of the student or the parent or other circumstances whereby the enforcement of the rule would work an undue hardship upon the student."

Plaintiff has a disability, diagnosed as ADD. While he resided in Florida, his parents chose to have him repeat the tenth grade because of problems with his academic progress caused by or related to his specific learning disability with written language. Plaintiff and his parents moved to Oregon prior to plaintiff enrolling in the eleventh grade at Marshfield. While in the eleventh grade, plaintiff participated in football on the junior varsity squad.

Plaintiff is presently enrolled in the twelfth grade at Marshfield. Because he repeated the tenth grade of high school while living in Florida, this is his fifth year as a high school student. In that he is presently 18 years of age, however, he is not precluded by OSAA's age rule from participating in high school athletics (absent a waiver of its age-rule, a student who turns nineteen prior to August 15th of the school year is ineligible to participate in athletics).

Plaintiff offered substantial evidence at the hearing that his participation in athletics significantly assists him in coping with his disability. Being involved in team sports may well be considered a vital part of a high school student's life, providing the student with not only self-esteem but also with motivation to succeed academically. As stated by Marshfield Principal Arnold Roblan in his

letter to OSAA in support of the waiver request:

> During the special–ed testing process, the psychologist and pediatrician both concluded that Adam has learning disabilities. A MDT[1] meeting was held and determined Adam does qualify for and will receive special education services during the 1998–1998 school year. The members of the MDT team all felt that participation in extracurricular activities (football and wrestling) would be beneficial to his success as they contribute greatly to his self-esteem.
>
> Adam is an immature 18 year old who has begun to show his potential. We saw glimpses of the potential last year, both academically and athletically. I believe that during the 1998–1999 school year, the assistance provided by the special ed program (which he should have had throughout his education), coupled with athletic participation will provide a nurturing educational environment, encourage maturation, and advance academic growth. It is my hope that a waiver is granted so that we may work to help Adam reach his full potential.

Pursuant to procedures established by the OSAA for waivers of its eligibility rules, plaintiff and the principal of Marshfield High School requested that plaintiff be allowed to participate in athletics during his fifth year of high school. OSAA Assistant Executive Director Tom Welter initially denied the request. Plaintiff thereafter appealed to the Executive Board of OSAA, which granted a hearing on the request. Following the hearing, the seven members of the Board unanimously rejected the request.

The criteria the OSAA utilizes to consider the Fifth Year Eligibility requests are set forth in the OSAA Handbook as follows:

## ELIGIBILITY—FIFTH YEAR CRITERIA

It is the intent of the OSAA that a student graduate within eight semesters and that additional eligibility be granted only in extraordinary circumstances. When interpreting and applying OSAA Rule 8–9–3 in cases where a student requests more than eight semesters of eligibility, the Executive Board or the Executive Director may consider the following factors, among others deemed relevant to the determination of whether eligibility should be granted. **Any one of these criteria may be a basis for denial.**

1. whether the circumstances cited by the student, which made the student unable or ineligible to participate, were created by factors beyond the students control;

2. the length of time a student was unable or ineligible to participate;

3. the number of activities (seasons, games, competitions, events) in which the student was unable to participate;

4. the number of activities in which the student was able to participate, or in which the student did participate, during his/her eight semesters of eligibility;

5. whether the student was able to participate in similar activities during the time that he/she was unable to participate in the particular OSAA activity;

6. the possibility that the student's eligibility for more than eight semesters could pose a danger to other students;

7. the likelihood that the students's eligibility for more than eight semesters will give the student or the student's team a competitive advantage;

8. the likelihood that the student's eligibility for more than eight semesters will deprive other students of the opportunity to participate in the activity, or limit other students' participation in the activity;

9. whether the student was otherwise able to progress academically during any period of ineligibility; and/or

10. whether the student has provided medical or other professional evidence substantiating the condition giving rise to the loss of opportunity to participate.

---

1. MDT apparently stands for multidisciplinary team. An MDT meeting would typically call together professionals from different disciplines to discuss a particular student. For example, a principal, school psychologist, special education teacher and others might be present at an MDT meeting to discuss a particular student.

Waivers of the eligibility rules have been granted by the OSAA, albeit infrequently. Examples cited at the hearing included:

1) students who dropped out of school for a period of time in order to undergo drug rehabilitation, and thus lost their eligibility during that time period;

2) students who lost eligibility because of an incapacitating bodily injury which precluded attendance at school during the student's recovery period;

3) a student with cystic fibrosis whose prognosis was so poor that she was allowed to participate in high school athletics while in 8th grade. Her disease stabilized to the point where she was able to attend high school and participate in athletics for eight semesters, and she was granted extra eligibility as a result.

Notwithstanding example 3, *supra*, in general the OSAA has focused on whether a student's particular hardship has prevented the student from attending school in deciding whether to grant a waiver request. Thus, students with minor injuries that may have prevented them from playing a sport but not from attending school and who elected to drop out of school in order to recapture an otherwise lost sport season have been denied waivers. The primary reason OSAA denied Adam Bingham's request for an exception was that his hardship or disability has not actually precluded him from attending high school for a semester or more.

### STANDARDS FOR ISSUANCE OF PRELIMINARY INJUNCTION

The parties dispute the applicable standard for the issuance of a preliminary injunction in this case. Plaintiff asserts a preliminary injunction may issue if the moving party shows either 1) a combination of probable success on the merits and a possibility of irreparable injury or 2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party. *See Native Village of Quinhagak v. United States,* 35 F.3d 388, 392 (9th Cir.1994).

OSAA characterizes plaintiff's request as one for a "mandatory" injunction which requires a heightened standard. In *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979), the court outlined the distinction as follows:

> Mandatory preliminary relief, which goes well beyond simply maintaining the status quo Pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.
>
> . . . .
>
> Courts are more reluctant to grant a mandatory injunction than a prohibitory one and ... generally an injunction will not lie except in prohibitory form. Such mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation damages.

*See also Dahl v. HEM Pharmaceuticals Corp.,* 7 F.3d 1399, 1403 (9th Cir.1993); *Stanley v. University of Southern California,* 13 F.3d 1313, 1320 (9th Cir.1994).

Plaintiff counters that he is not seeking a mandatory injunction, but a prohibitory one—i.e., a prohibition against OSAA's application of one of its rules to deny him a reasonable accommodation for his disability.

Although unnecessary to my ruling, I am in substantial agreement with plaintiff's characterization of the nature of the required relief requested. Plaintiff seeks a court-ordered fifth year of eligibility at Marshfield High School. If he is entitled to such, OSAA may not necessarily be ordered to give him a waiver of its Eight Semester Rule. Relief can be afforded by an order prohibiting defendant from imposing any sanctions against Marshfield, plaintiff's coach, or the athletic programs in which plaintiff participates pursuant to this court's ruling. At any rate, even pursuant to the higher standards advanced by the OSAA, I find that plaintiff is entitled to preliminary injunctive relief.

*Analysis of the Merits of Plaintiff's Claims and the Irreparable Injury Factor*

In order to prevail on his ADA claim, plaintiff has the burden of establishing: 1) that he has a disability within the meaning of the ADA; 2) that defendant OSAA is subject to the provisions of the ADA; and 3) that participation in athletics at Marshfield High

School during his fifth year of enrollment in high school is a reasonable accommodation of his disability.

From the evidence presented at the hearing and the briefing submitted by the parties, I find that plaintiff has demonstrated probable success on the merits in these issues, for the following reasons and with the following qualifications.

### 1). *Whether plaintiff has a disability cognizable by the ADA*

■ "Learning" is a "major life activity" included under the umbrella of the ADA, and the condition which plaintiff has (ADD) can certainly operate as a "substantial limit" to his ability to learn, especially in the context of a high school environment wherein his specific learning disability can be particularly disruptive of academic progress.

### 2) *Whether OSAA is subject to the provisions of the ADA*

■ Public and private secondary schools are expressly included as entities which are subject to the ADA. 42 U.S.C § 12181(7)(J). A school may not discriminate on the basis of a student's disability, nor deny a reasonable accommodation to a disabled student. Athletics and other extracurricular activities are part of the "goods, services, facilities, privileges, advantages, and accommodations" offered by schools to its students. 42 U.S.C § 12182(a). Thus, Marshfield High School could not lawfully withhold athletic eligibility from a student on account of that student's disability or deny a disabled student a reasonable accommodation that would permit him or her to be eligible to participate in athletics.

■ OSAA is an organization whose membership consists entirely of public and private secondary schools. The membership schools have delegated rule-making authority to OSAA as to the area of their athletic competitions. OSAA is nothing more nor less than a collective entity of membership schools empowered to make rules governing interscholastic athletic competition among its constituent members. I cannot accept the proposition that membership schools can take themselves out of the reach of the ADA in the area of athletics by delegating rule-making authority in this fashion, especially where the OSAA's Delegate Assembly (or ultimate rule-making body) consists essentially of membership school administrators.

### 3) *Whether a Fifth year of eligibility is a reasonable accommodation for plaintiff's disability under the specific circumstances presented herein*

■ Plaintiff has the burden of proving that a requested modification is reasonable. "Plaintiff meets this burden by introducing evidence that the requested modification is reasonable in the general sense, that is, reasonable in the run of cases." *Johnson v. Gambrinus Co.*, 116 F.3d 1052, 1059 (5th Cir.1997).

■ At the hearing, plaintiff established that the requested modification is reasonable in the general sense. Defendant OSAA allows fifth year seniors to participate in high school athletic contests under a variety of circumstances, and has procedures to assess the specific circumstances of each request for fifth year eligibility. Although defendant argues that plaintiff should not be granted a waiver of the Eight Semester Rule because he has actually attended school and been eligible to participate in athletics for the full eight semesters, evidence was introduced that a similarly situated student was nonetheless granted a waiver of the Eight Semester Rule after she had attended school and participated or was eligible to participate in athletics for eight semesters. With respect to OSAA's stated policy or purpose underlying the Eight Semester Rule, it does not appear that plaintiff's participation in athletics this year would frustrate that policy. Plaintiff is not older or more athletically experienced than other seniors, and no evidence was presented which would indicate that plaintiff's repetition of the 10th grade was a form of "red-shirting", i.e., holding back in order to mature physically and athletically. Furthermore, the rule's purpose in encouraging students to graduate in four years is not frustrated if the student's failure to do so is caused by a serious disability beyond the student's control.

■ Once plaintiff establishes that the requested accommodation is reasonable in a

general sense, the burden shifts to the defendant to prove that the modification is unreasonable under the circumstances, that such would fundamentally alter the nature of the public accommodation or otherwise work an undue hardship on the entity. *Johnson, supra; Crowder v. Kitagawa* 81 F.3d 1480, 1486 (9th Cir.1996).

 Defendant OSAA contends that a modification of its rule to permit Bingham a fifth year of eligibility would fundamentally alter the function of OSAA and impose an all but impossible burden on the Executive Board. This constitutes an affirmative defense, as to which defendant bears the burden of proof at trial. At this stage of the proceeding, little evidence has been offered on this defense, and the court is consequently unable to address the merits of such defense at this time. Obviously, however, plaintiff should not be denied preliminary relief simply because defendant OSAA will be presenting evidence of an affirmative defense on the issue of whether a permanent injunction should issue.

### Irreparable Injury

 If plaintiff is not granted preliminary injunctive relief, he will be unable to participate on the football team, as a trial on the merits of his claim cannot be conducted before the expiration of the football season. This type of injury cannot be adequately remedied by monetary damages, and plaintiff will lose for all time the chance to participate in fall sports during his final year of high school.

OSAA contends that the court should balance this hardship or injury to plaintiff with the hardship that Marshfield High School and its supporters will potentially suffer if the court erroneously grants a preliminary injunction and the injunction is revoked after a trial on the merits or overturned on appeal. OSAA Rule 5–5 (the Restitution Rule) provides:

Responsibility: If a school employee or representative declared to be in violation of any Article, Rule Board Policy, Participation Limitation, Sports Season Limitation or Board Interpretation or if a student

who has been declared ineligible is permitted to participate in Association activities or interscholastic competition because of a temporary restraining order, preliminary injunction, and/or permanent injunction by a court against the school or the Association, and if such restraining order and/or injunction is subsequently vacated, dismissed, stayed, reversed, or finally determined by the courts to not justify injunctive relief, one or more of the penalties outlined in Rule 5 above may be assessed in the interest of restitution and fairness to other member schools.

Rule 5 specifies that:

Upon a ruling by the Executive Director or by the Executive Board that a student is ineligible, the school shall forfeit all *meets, contests, or Tournaments* in which the student participated during that student's ineligibility, either before and/or after such ruling.

(Emphasis in original).

OSAA argues that Marshfield's football team is currently ranked as the top 4A [2] team in the state, is undefeated, and has an excellent opportunity to win the state championship. It asserts that if plaintiff participates in any contests and it is later determined that a waiver of the Eight Semester Rule is not warranted under the circumstances herein, that OSAA may require Marshfield to forfeit any games participated in, and that such sanctions would cause injury to the team, the school, and the community.

I am not persuaded that OSAA's invocation of the Restitution Rule mitigates against the granting of preliminary injunctive relief.

 Assuming, *arguendo*, the validity of the Restitution Rule, an appropriate beginning to the analysis of defendant's position is the observation that enforcement of the rule is entirely discretionary on the part of the OSAA. In the event it ultimately prevails in this litigation, I have great difficulty in understanding the reasonableness of OSAA penalizing Marshfield High School for allowing Bingham to play football pursuant to an in-

---

**2.** 4A is the classification for the schools with the largest enrollments. Schools with smaller student bodies are grouped into 3A, 2A, and 1A classifications.

terim court order under the combination of circumstances presented.

First, OSAA concedes that this is a case of first impression in the 9th Circuit. The issues are important: may a learning disabled student be reasonably accommodated by a waiver of a high school athletic association's eligibility requirement? Plaintiff asserts rights conferred by the ADA, a statute of relatively recent vintage. Marshfield High is caught in the middle of the dispute. The School has no ability to prevent plaintiff from seeking redress through the federal judicial system, nor is it in any position to overrule any ruling by this court on the merits of the lawsuit.

Second, OSAA does not contest Marshfield football coach Kenton Wigle's testimony that plaintiff is a lesser-skilled player who will see limited playing time as a reserve. His inclusion on the team will confer no competitive advantage to Marshfield in its contests. If Marshfield wins a state title, it is extremely doubtful that Adam Bingham's addition to the team will be a causative factor in this accomplishment.

Third, in the exercise of its discretion pursuant to Rule 5–5, the Executive Board of OSAA would surely take into consideration the public policy issues raised by the specter of sanctions. Our nation is governed by law, and our courts are delegated the responsibility of resolving legal disputes. Adam Bingham should not equitably be made a pariah in the community of a potential state championship football team because he pursues, in good faith, remedies arguably conferred by federal legislation.

In sum, the threat of sanctions against Marshfield High in this case and under these circumstances is entitled to little weight in any "balance of hardships" inquiry.

*OSAA IS ENJOINED FROM IMPOSING ANY SANCTIONS AGAINST MARSHFIELD HIGH SCHOOL, ITS STAFF, OR ITS ATHLETIC TEAMS SHOULD PLAINTIFF PARTICIPATE IN INTERSCHOLASTIC COMPETITIONS PURSUANT TO THIS COURT'S ORDER*

OSAA cites two state cases in support of its position that the Restitution Rule is valid. In *Indiana High School Athletic Association, Inc. v. Reyes,* 694 N.E.2d 249, 257–58 (1997), the court states:

> Undeniably, the Restitution Rule imposes hardship on a school that, in compliance with an order of a court which is later vacated, fields an ineligible player. On the other hand, use of an ineligible player imposes a hardship on other teams that must compete against the teams fielding ineligible players. While schools will contend that it is unfair when they have to forfeit victories earned with an ineligible player on the field because they complied with a court order, competing schools will reply that it is unfair when they have to compete against a team with an ineligible student athlete because a local trial judge prohibited the school or the IHSAA from following eligibility rules. The Restitution Rule represents the agreement of IHSAA members on how to balance those competing interests.

*See also Cardinal Mooney High School v. Michigan High School Athletic Association,* 437 Mich. 75, 467 N.W.2d 21 (Mich.1991).

Plaintiff distinguishes *Reyes* and *Cardinal Mooney* by observing that neither case involved the ADA or the public policies it endorses. 42 U.S.C § 12203(b) expressly provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

■■■] Unquestionably, the possibility of sanctions against Marshfield High (should its coach play plaintiff in any contests pursuant to the court's preliminary injunction) has a coercive and intimidating effect on plaintiff as he seeks to exercise rights granted by the ADA. Adam Bingham undoubtedly does not desire to become a cause of anxiety on the team and in the community as the team is threatened with forfeiture of its games should he pursue this litigation. The Restitution Rule, if applied to this case, clearly operates to dissuade disabled student-athletes from exercising their rights to petition

the courts for redress. In that regard, the rule clashes head on with public policy.

The reasoning articulated in *Reyes* and *Cardinal Mooney* is unpersuasive when considered in light of such important public policy issues.

While interscholastic competitions are important, does the purpose of the Restitution Rule trump the purpose of the ADA or the purpose of providing a judicial forum for the resolution of civil disputes? Although the *Reyes* court discussed the unfairness to competitors who lost to a team with a member playing pursuant to court order who subsequently was determined to be ineligible, it does not seem to have given much shrift at all to the unfairness visited upon those who are presented with the Hobson's choice of surrendering their right of access to the courts or exposing their teammates, classmates and community to sanctions.

At the risk of sounding heretical in a culture where athletics are of such importance, one wonders if the importance of revisiting the results of games in the interest of fairness to the losers is being exaggerated.

OSAA cited a recent example that perhaps illustrates this point: Ontario High School was stripped of its 3A state football championship because an ineligible player was inadvertently allowed to play on its team. However, the school Ontario beat in the championship game was not awarded the state championship—the title was simply vacated for that season. While certainly meaningful changes can be achieved if a player's ineligibility is discovered during the course of a season and forfeitures of games are computed at that point (resulting in differences in league standings and playoff berths), after the season has ended the changes become essentially asterisks on a page of history. The real point of the forfeitures at that point is prophylactic—i.e., to encourage schools to be extremely careful in screening the ineligible.

Here, by the time the case is litigated to finality and the Restitution Rule may ever become applicable, the football season will be long ended. Game results and championships might be adjusted in the record book, but any team which lost to Marshfield on the field will not have much to gain for the adjustment. The most significant aspect of the application of the Restitution Rule at that juncture would be as a deterrent—to send schools the signal that they must not play potentially ineligible players for any reason, even with a court order.

Under these circumstances, the fairness issue becomes distorted when the interests of a team's competition ·is elevated above the interests invoked by society's delegation of jurisdiction to its judicial system to resolve disputes such as the instant case. As noted previously, any relief plaintiff is entitled to is nullified if Marshfield has a strong disincentive to allow him to play in actual contests because down the road it might be required to forfeit the contests.

Accordingly, I find the reasoning of the court in *Crocker v. Tennessee Secondary School Athletic Association*, 735 F.Supp. 753, 761 (M.D.Tenn.1990) to be the better analysis in this area. Under analogous facts, the court there observed:

> In the present case, Metro allowed Michael Crocker to play in interscholastic sports pursuant to a valid court order. Defendant, upon dissolution of the injunction, retaliated against Metro and Michael Crocker, punishing them for exercising their right of access to the judicial system despite the Court of Appeals bench statement instructing TSSAA not to take any retaliatory actions. The TSSAA's action further renders meaningless this Court's temporary restraining order.

> The effect of TSSAA's action is unjust and outrageous. Fundamental fairness dictates that Metro should not incur any penalty or sanction by virtue of the fact that plaintiff Michael Crocker participated in interscholastic athletics pursuant to a valid court order.

> · · · ·

> Should TSSAA be allowed to forfeit games of McGavock High School in which Michael Crocker played during the 1988–1989 season, irreparable injury will be visited upon both Michael Crocker and Metro. Michael Crocker will probably not be allowed to participate in interscholastic sports in the current year because his coaches will fear,

despite this Court's order, that in some point later in time the TSSAA will declare the games played this year to be forfeit. As stated above, money damages cannot adequately compensate Michael Crocker for not being allowed to participate in high school athletic contests.

Metro will suffer irreparable injury because it will, in effect, be punished by TSSAA for having followed a valid order of a court. If an injunction does not issue, Metro will be forced to choose between allowing Crocker to play in contests that the TSSAA will declare forfeit, or benching Crocker to satisfy the TSSAA in violation of the valid order of Administrative Law Judge Mulroy.

If the TSSAA imposes sanctions against Metro, it is highly probable that all of McGavock High School's games in which Crocker participated, will be forfeited and all trophies withdrawn. This will impact not only upon McGavock High School, and Michael Crocker, but upon all the students who participated alongside Michael Crocker and who had no interest in this action other than as Michael's teammates. The injury visited upon the students who participate alongside Michael will be substantial.

TSAA will suffer no meaningful harm as a result of an order prohibiting it from declaring certain of McGavock High School games forfeit. TSAA's authority and ability to administrate interscholastic athletics in Tennessee will remain intact.

*Affd*, 908 F.2d 972 (6th Cir.1990). *See also Crandall v. North Dakota High School Activities Association*, 261 N.W.2d 921 (N.D. 1978).

### CONCLUSION

Defendants' motion for reconsideration is allowed. Upon consideration, the earlier findings are affirmed.

For the reasons set forth above, the court grants plaintiff's motion for a preliminary injunction prohibiting OSAA from applying its eligibility rules to render him ineligible to compete in athletics during his 5th year senior season at Marshfield High School. OSAA is further enjoined from applying its Restitution Rule to sanction Marshfield High School for complying with this court's order in the event the preliminary injunction is dissolved after trial of the case or in the event injunctive relief is otherwise set aside or overturned.